# EXHIBIT 2

# SECOND MERCHANT AGREEMENT

# SPARTAN BUSINESS SOLUTIONS, LLC d/b/a SPARTAN CAPITAL
(855) 532-1969

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

This is an Agreement dated 11/28/2022 by and between SPARTAN BUSINESS SOLUTIONS, LLC d/b/a SPARTAN CAPITAL ("SPARTAN") and each merchant listed below ("Merchant").

Merchant's Legal Name: Marquis Cattle Company Inc AND ALL ENTITIES UNDER EXHIBIT "B"

D/B/A: Marquis Cattle Company             Fed ID #: ███████

Type of Entity: Corporation

Business Address: 805 US Hwy 87      City: Belt      State: MT      Zip: 59412
Contact Address: 805 US Hwy 87      City: Belt      State: MT      Zip: 59412

Email Address: marquiscattleco@gmail.com

| | |
|---|---|
| **Purchase Price**<br>This is the amount being paid to Merchant(s) for the Receivables Purchased Amount (defined below). | $100,000.00 |
| **Receivables Purchased Amount**<br>This is the amount of Receivables (defined in Section 1 below) being sold. | $140,000.00 |
| **Specified Percentage**<br>This is the percentage of Receivables (defined below) to be delivered until the Receivables Purchased Amount is paid in full. | 15% |
| **Net Funds Provided**<br>This is the net amount being paid to or on behalf of Merchant(s) after deduction of applicable fees listed in Section 2 below. | $94,500.00 |
| **Initial Estimated Payment**<br>This is only applicable if an Addendum for Estimated Payments is being signed. This is the initial amount of periodic payments collected from Merchant(s) as an approximation of no more than the Specified Percentage of the Receivables and is subject to reconciliation as set forth in Section 4 below. | $7,000.00      per   week |

**TERMS AND CONDITIONS**

I have read and agree to the terms and conditions set forth above:

*Cory Marquis*

Name: Cory Shannon Marquis   Title: Owner   Date: 11/28/2022

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

**1. Sale of Future Receipts.** Merchant(s) hereby sell, assign, and transfer to SPARTAN (making SPARTAN the absolute owner) in consideration of the funds provided ("Purchase Price") specified above, all of each Merchant's future accounts, contract rights, and other obligations arising from or relating to the payment of monies from each Merchant's customers and/or other third party payors (the "Receivables", defined as all payments made by cash, check, credit or debit card, electronic transfer, or other form of monetary payment in the ordinary course of each merchant's business), for the payment of each Merchant's sale of goods or services until the amount specified above (the "Receivables Purchased Amount") has been delivered by Merchant(s) to SPARTAN. Each Merchant hereby acknowledges that until the Receivables Purchased Amount has been received in full by SPARTAN, each Merchant's Receivables, up to the balance of the Receivables Purchased Amount, are the property of SPARTAN and not the property of any Merchant. Each Merchant agrees that it is a fiduciary for SPARTAN and that each Merchant will hold Receivables in trust for SPARTAN in its capacity as a fiduciary for SPARTAN.

The Receivables Purchased Amount shall be paid to SPARTAN by each Merchant irrevocably authorizing only one depositing account acceptable to SPARTAN (the "Account") to remit the percentage specified above (the "Specified Percentage") of each Merchant's settlement amounts due from each transaction, until such time as SPARTAN receives payment in full of the Receivables Purchased Amount. Each Merchant hereby authorizes SPARTAN to ACH debit the specified remittances from the Account on a weekly basis as of the next business day after the date of this Agreement, and will provide SPARTAN with all required access codes and monthly bank statements. Each Merchant understands that it will be held responsible for any fees resulting from a rejected ACH attempt or an Event of Default (see Section 2). SPARTAN is not responsible for any overdrafts or rejected transactions that may result from SPARTAN's ACH debiting the Specified Percentage amounts under the terms of this Agreement.

**2. Additional Fees.** In addition to the Receivables Purchased Amount, each Merchant will be held responsible to SPARTAN for the following fees, where applicable:

A. $5,500.00 - to cover underwriting and the ACH debit program, as well as related expenses. This will be deducted from payment of the Purchase Price.

B. Wire Fee - Merchant(s) shall receive funding electronically to the Account and will be charged $50.00 for a Fed Wire or $0.00 for a bank ACH. This will be deducted from payment of the Purchase Price.

C. Blocked Account/Default - $2,500.00 - If SPARTAN considers an Event of Default to have taken place under Section 34.

D. UCC Fee - $195.00 – to cover SPARTAN filing a UCC-1 financing statement to secure its interest in the Receivables Purchased Amount. A $195.00 UCC termination fee will be charged if a UCC filing is terminated.

E. Court costs, arbitration fees, collection agency fees, attorney fees, expert fees, and any other expenses incurred in litigation, arbitration, or the enforcement of any of SPARTAN's legal or contractual rights against each Merchant and/or each Guarantor, if required, as explained in other Sections of this Agreement.

**3. Cap on Collection of the Receivables Purchased Amount.** The amount that SPARTAN will collect from Merchant(s) towards the Receivables Purchased Amount during any specific day will be capped at $7,000.00 (the "Cap"). If the Specified Percentage of all Receivables for a specific week is less than the Cap, then in addition to the Specified Percentage of Receivables for that week, SPARTAN will be permitted to collect any Receivables it did not previously collect due to the Cap such that the total amount collected during that week does not exceed the Cap. The Cap is not applicable to make up for a business day on which SPARTAN is closed and does not ACH debit the Account, to subsequent attempts to collect a rejected or blocked ACH payment, or for the collection of any of the fees listed in Section 2 or if any Event of Default listed in Section 34 is considered by SPARTAN to have taken place.

**4. Reconciliations.** Any Merchant may give written notice to SPARTAN requesting that SPARTAN conduct a reconciliation in order to ensure that the amount that SPARTAN has collected equals the Specified Percentage of Merchant(s)'s Receivables under this Agreement. Any Merchant may give written notice requesting a reconciliation. A reconciliation may also be requested by e-mail to frank@spartancapitalgroup.com and such notice will be deemed to have been received if and when SPARTAN sends a reply e-mail (but not a read receipt). If such reconciliation determines that SPARTAN collected more than it was entitled to, then SPARTAN will credit to the Account all amounts to which SPARTAN was not entitled within seven days thereafter. If such reconciliation determines that SPARTAN collected less than it was

**I have read and agree to the terms and conditions set forth above:**

*Cory Marquis*

---

Name: Cory Shannon Marquis   Title: Owner   Date: 11/28/2022

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

entitled to, then SPARTAN will debit from the Account all additional amounts to which SPARTAN was entitled within seven days thereafter. In order to effectuate this reconciliation, any Merchant must produce with its request the login and password for the Account and any and all bank statements and merchant statements covering the period from the date of this Agreement through the date of the request for a reconciliation. SPARTAN will complete each such reconciliation within two business days after receipt of a written request for one accompanied by the information and documents required for it. Nothing herein limits the amount of times that such a reconciliation may be requested.

**5. Prepayments.** Although there is no obligation to do so, any Merchant may prepay any amount towards the Receivables Purchased Amount. There will be no penalty for any prepayment made by any Merchant. Any Merchant may elect to terminate this Agreement by prepaying SPARTAN the amount of the balance of the Receivables Purchased Amount at that time.

**6. Merchant Deposit Agreement.** Merchant(s) shall appoint a bank acceptable to SPARTAN, to obtain electronic fund transfer services and/or "ACH" payments. Merchant(s) shall provide SPARTAN and/or its authorized agent with all of the information, authorizations, and passwords necessary to verify each Merchant's Receivables. Merchant(s) shall authorize SPARTAN and/or its agent(s) to deduct the amounts owed to SPARTAN for the Receivables as specified herein from settlement amounts which would otherwise be due to each Merchant and to pay such amounts to SPARTAN by permitting SPARTAN to withdraw the Specified Percentage by ACH debiting of the account. The authorization shall be irrevocable absent SPARTAN's written consent.

**7. Term of Agreement.** The term of this Agreement is indefinite and shall continue until SPARTAN receives the full Receivables Purchased Amount, or earlier if terminated pursuant to any provision of this Agreement. The provisions of Sections 4, 6, 7, 8, 10, 11, 13, 14, 15, 17, 18, 19, 22, 23, 28, 31, 32, 33, 34, 35, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, and 58 shall survive any termination of this Agreement.

**8. Ordinary Course of Business.** Each Merchant acknowledges that it is entering into this Agreement in the ordinary course of its business and that the payments to be made from each Merchant to SPARTAN under this Agreement are being made in the ordinary course of each Merchant's business.

**9. Financial Condition.** Each Merchant and each Guarantor (Guarantor being defined as each signatory to the Guarantee of this Agreement) authorizes SPARTAN and its agent(s) to investigate each Merchant's financial responsibility and history, and will provide to SPARTAN any bank or financial statements, tax returns, and other documents and records, as SPARTAN deems necessary prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable for release of financial information. SPARTAN is authorized to update such information and financial profiles from time to time as it deems appropriate.

**10. Monitoring, Recording, and Electronic Communications.** SPARTAN may choose to monitor and/or record telephone calls with any Merchant and its owners, employees, and agents. By signing this Agreement, each Merchant agrees that any call between SPARTAN and any Merchant or its representatives may be monitored and/or recorded. Each Merchant and each Guarantor grants access for SPARTAN to enter any Merchant's premises and to observe any Merchant's premises without any prior notice to any Merchant at any time after execution of this Agreement.

SPARTAN may use automated telephone dialing, text messaging systems, and e-mail to provide messages to Merchant(s), Owner(s) (Owner being defined as each person who signs this Agreement on behalf of a Merchant), and Guarantor(s) about Merchant(s)'s account. Telephone messages may be played by a machine automatically when the telephone is answered, whether answered by an Owner, a Guarantor, or someone else. These messages may also be recorded by the recipient's answering machine or voice mail. Each Merchant, each Owner, and each Guarantor gives SPARTAN permission to call or send a text message to any telephone number given to SPARTAN in connection with this Agreement and to play pre-recorded messages and/or send text messages with information about this Agreement and/or any Merchant's account over the phone. Each Merchant, each Owner, and each Guarantor also gives SPARTAN permission to communicate such information to them by e-mail. Each Merchant, each Owner, and each Guarantor agree that SPARTAN will not be liable to any of them for any such calls or electronic communications, even if information is communicated to an unintended recipient. Each Merchant, each Owner, and each Guarantor acknowledge that when they

**I have read and agree to the terms and conditions set forth above:**

*Cory Marquis*

_____

Name: <u>Cory Shannon Marquis</u>   Title:<u>Owner</u>   Date: <u>11/28/2022</u>

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

receive such calls or electronic communications, they may incur a charge from the company that provides them with telecommunications, wireless, and/or Internet services, and that SPARTAN has no liability for any such charges.

**11. Accuracy of Information Furnished by Merchant and Investigation Thereof.** To the extent set forth herein, each of the parties is obligated upon his, her, or its execution of the Agreement to all terms of the Agreement. Each Merchant and each Owner signing this Agreement represent that he or she is authorized to sign this Agreement for each Merchant, legally binding said Merchant to its obligations under this Agreement and that the information provided herein and in all of SPARTAN's documents, forms, and recorded interview(s) is true, accurate, and complete in all respects. SPARTAN may produce a monthly statement reflecting the delivery of the Specified Percentage of Receivables from Merchant(s) to SPARTAN. An investigative report may be made in connection with the Agreement. Each Merchant and each Owner signing this Agreement authorize SPARTAN, its agents and representatives, and any credit-reporting agency engaged by SPARTAN, to (i) investigate any references given or any other statements obtained from or about each Merchant or any of its Owners for the purpose of this Agreement, and (ii) pull credit report at any time now or for so long as any Merchant and/or Owners(s) continue to have any obligation to SPARTAN under this Agreement or for SPARTAN's ability to determine any Merchant's eligibility to enter into any future agreement with SPARTAN. Any misrepresentation made by any Merchant or Owner in connection with this Agreement may constitute a separate claim for fraud or intentional misrepresentation.

*Authorization for soft pulls:* Each Merchant and each Owner understands that by signing this Agreement, they are providing 'written instructions' to SPARTAN under the Fair Credit Reporting Act, authorizing SPARTAN to obtain information from their personal credit profile or other information from Experian, TransUnion, and Equifax. Each Merchant and each Guarantor authorizes SPARTAN to obtain such information solely to conduct a pre-qualification for credit.

*Authorization for hard pulls:* Each Merchant and each Owner understands that by signing this Agreement, they are providing 'written instructions' to SPARTAN under the Fair Credit Reporting Act, authorizing SPARTAN to obtain information from their personal credit profile or other information from Experian, TransUnion, and Equifax. Each Merchant and each Guarantor authorizes SPARTAN to obtain such information in accordance with a merchant cash advance application.

**12. Transactional History.** Each Merchant authorizes its bank to provide SPARTAN with its banking and/or credit card processing history.

**13. Indemnification.** Each Merchant and each Guarantor jointly and severally indemnify and hold harmless each Merchant's credit card and check processors (collectively, "Processor") and Processor's officers, directors, and shareholders against all losses, damages, claims, liabilities, and expenses (including reasonable attorney and expert fees) incurred by Processor resulting from (a) claims asserted by SPARTAN for monies owed to SPARTAN from any Merchant and (b) actions taken by any Processor in reliance upon information or instructions provided by SPARTAN.

**14. No Liability.** In no event will SPARTAN be liable for any claims asserted by any Merchant under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect, or consequential damages, each of which is waived by each Merchant and each Guarantor.

**15. Sale of Receivables.** Each Merchant and SPARTAN agree that the Purchase Price under this Agreement is in exchange for the Receivables Purchased Amount and that such Purchase Price is not intended to be, nor shall it be construed as a loan from SPARTAN to any Merchant. SPARTAN is entering into this Agreement knowing the risks that each Merchant's business may decline or fail, resulting in SPARTAN not receiving the Receivables Purchased Amount. Each Merchant agrees that the Purchase Price in exchange for the Receivables pursuant to this Agreement equals the fair market value of such Receivables. SPARTAN has purchased and shall own all the Receivables described in this Agreement up to the full Receivables Purchased Amount as the Receivables are created. Payments made to SPARTAN in respect to the full amount of the Receivables shall be conditioned upon each Merchant's sale of products and services and the payment therefor by each Merchant's customers in the manner provided in this Agreement. Although certain jurisdictions require the disclosure of an Annual Percentage Rate or APR in connection with this Agreement, those disclosures do not change the fact that the transaction encompassed by this Agreement is not a loan and does not have an interest rate.

**I have read and agree to the terms and conditions set forth above:**

*Cory Marquis*

_____

Name: <u>Cory Shannon Marquis</u>   Title:<u>Owner</u>   Date: <u>11/28/2022</u>

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

**16. Power of Attorney.** Each Merchant irrevocably appoints SPARTAN as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to SPARTAN, or, if SPARTAN considers an Event of Default to have taken place under Section 34, to settle all obligations due to SPARTAN from each Merchant, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral (which is defined in Section 33); (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents, or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign each Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to SPARTAN; and (v) to file any claims or take any action or institute any proceeding which SPARTAN may deem necessary for the collection of any of the unpaid Receivables Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Receivables Purchased Amount.

**17. Protections Against Default.** The following Protections 1 through 7 may be invoked by SPARTAN, immediately and without notice to any Merchant in the event:
(a) Any Merchant takes any action to discourage the use of methods of payment ordinarily and customarily used by its customers or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks and credit cards for the purchase of any Merchant's services and products;
(b) Any Merchant changes its arrangements with any Processor in any way that is adverse to SPARTAN;
(c) Any Merchant changes any Processor through which the Receivables are settled to another electronic check and/or credit card processor or permits any event to occur that could cause diversion of any Merchant's check and/or credit card transactions to another such processor;
(d) Any Merchant interrupts the operation of its business (other than adverse weather, natural disasters, or acts of God) or transfers, moves, sells, disposes, or otherwise conveys its business or assets without (i) the express prior written consent of SPARTAN and (ii) the written agreement of any purchaser or transferee to the assumption of all of any Merchant's obligations under this Agreement pursuant to documentation satisfactory to SPARTAN; or
(e) Any Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for any Merchant's goods or services with any means other than checks and/or credit cards that are settled through Processor. These protections are in addition to any other remedies available to SPARTAN at law, in equity, or otherwise available pursuant to this Agreement.
(f) SPARTAN considers any Event of Default listed in Section 34 to have taken place.
Protection 1: The full uncollected Receivables Purchased Amount plus all fees due under this Agreement may become due and payable in full immediately.
Protection 2. SPARTAN may enforce the provisions of the Guarantee against Guarantor.
Protection 3. SPARTAN may enforce its security interest in the Collateral identified in Section 33.
Protection 4. SPARTAN may proceed to protect and enforce its rights and remedies by litigation or arbitration.
Protection 5. If requested by SPARTAN, Merchant shall deliver to SPARTAN an executed assignment of lease of each Merchant's premises in favor of SPARTAN. Upon breach of any provision in this Section 17, SPARTAN may exercise its rights under such assignment of lease.
Protection 6. SPARTAN may debit any Merchant's depository accounts wherever situated by means of ACH debit or electronic or facsimile signature on a computer-generated check drawn on any Merchant's bank account or otherwise, in an amount consistent with the terms of this Agreement.
Protection 7. SPARTAN will have the right, without waiving any of its rights and remedies and without notice to any Merchant and/or Guarantor, to notify each Merchant's credit card and/or check processor of the sale of Receivables hereunder and to direct such credit card processor to make payment to SPARTAN of all or any portion of the amounts received by such credit card processor on behalf of each Merchant. Each Merchant hereby grants to SPARTAN an irrevocable power-of-attorney, which power-of-attorney will be coupled with an interest, and hereby appoints SPARTAN and its representatives as each Merchant's attorney-in-fact to take any and all action necessary to direct such new or additional credit card and/or check processor to make payment to SPARTAN as contemplated by this Section.

**18. Protection of Information.** Each Merchant and each person signing this Agreement on behalf of each Merchant and/or as Owner, in respect of himself or herself personally, authorizes SPARTAN to disclose information concerning each Merchant, Owner and/or Guarantor's credit standing and business conduct to agents, affiliates,

**I have read and agree to the terms and conditions set forth above:**

*Cory Marquis*

_____

Name: <u>Cory Shannon Marquis</u>   Title:<u>Owner</u>   Date: <u>11/28/2022</u>

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

subsidiaries, and credit reporting bureaus. Each Merchant, Guarantor, and Owner hereby waives to the maximum extent permitted by law any claim for damages against SPARTAN or any of its affiliates relating to any (i) investigation undertaken by or on behalf of SPARTAN as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

**19. Confidentiality.** Each Merchant understands and agrees that the terms and conditions of the products and services offered by SPARTAN, including this Agreement and any other SPARTAN documents (collectively, "Confidential Information") are proprietary and confidential information of SPARTAN. Accordingly, unless disclosure is required by law or court order, Merchant(s) shall not disclose Confidential Information of SPARTAN to any person other than an attorney, accountant, financial advisor, or employee of any Merchant who needs to know such information for the purpose of advising any Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising any Merchant and first agrees in writing to be bound by the terms of this Section 19.

**20. D/B/As.** Each Merchant hereby acknowledges and agrees that SPARTAN may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between SPARTAN and each Merchant, including the filing of UCC-1 financing statements and other notices or filings.

**21. Financial Condition and Financial Information.** Each Merchant represents, warrants, and covenants that its bank and financial statements, copies of which have been furnished to SPARTAN, and future statements which will be furnished hereafter at the request of SPARTAN, fairly represent the financial condition of each Merchant at such dates, and that since those dates there have been no material adverse changes, financial or otherwise, in such condition, operation, or ownership of any Merchant. Each Merchant has a continuing affirmative obligation to advise SPARTAN of any material adverse change in its financial condition, operation, or ownership.

**22. Governmental Approvals.** Each Merchant represents, warrants, and covenants that it is in compliance and shall comply with all laws and has valid permits, authorizations, and licenses to own, operate, and lease its properties and to conduct the business in which it is presently engaged.

**23. Authorization.** Each Merchant represents, warrants, and covenants that it and each person signing this Agreement on behalf of each Merchant has full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

**24. Insurance.** Each Merchant represents, warrants, and covenants that it will maintain business-interruption insurance naming SPARTAN as loss payee and additional insured in amounts and against risks as are satisfactory to SPARTAN and shall provide SPARTAN proof of such insurance upon request.

**25. Electronic Check Processing Agreement.** Each Merchant represents, warrants, and covenants that it will not, without SPARTAN's prior written consent, change its Processor, add terminals, change its financial institution or bank account, or take any other action that could have any adverse effect upon any Merchant's obligations under this Agreement.

**26. Change of Name or Location.** Each Merchant represents, warrants, and covenants that it will not conduct its business under any name other than as disclosed to SPARTAN or change any place(s) of its business without prior written consent from SPARTAN.

**27. Estoppel Certificate.** Each Merchant represents, warrants, and covenants that it will, at any time, and from time to time, upon at least two day's prior notice from SPARTAN to that Merchant, execute, acknowledge, and deliver to SPARTAN and/or to any other person or entity specified by SPARTAN, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Receivables Purchased Amount or any portion thereof have been paid.

**I have read and agree to the terms and conditions set forth above:**

*Cory Marquis*
_____

Name: <u>Cory Shannon Marquis</u>   Title:<u>Owner</u>   Date: <u>11/28/2022</u>

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

**28. No Bankruptcy.** Each Merchant represents, warrants, and covenants that as of the date of this Agreement, it does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against any Merchant. Each Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it. Each Merchant further warrants that there will be no statutory presumption that it would have been insolvent on the date of this Agreement.

**29. Unencumbered Receivables.** Each Merchant represents, warrants, and covenants that it has good, complete, and marketable title to all Receivables, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges, and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with this Agreement or adverse to the interests of SPARTAN, other than any for which SPARTAN has actual or constructive knowledge as of the date of this Agreement.

**30. Stacking.** Each Merchant represents, warrants, and covenants that it will not enter into with any party other than SPARTAN any arrangement, agreement, or commitment that relates to or involves the Receivables, whether in the form of a purchase of, a loan against, collateral against, or the sale or purchase of credits against Receivables without the prior written consent of SPARTAN.

**31. Business Purpose.** Each Merchant represents, warrants, and covenants that it is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and each Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family, or household purposes.

**32. Default Under Other Contracts.** Each Merchant represents, warrants, and covenants that its execution of and/or performance under this Agreement will not cause or create an event of default by any Merchant under any contract with another person or entity.

**33. Security Interest.** To secure each Merchant's payment and performance obligations to SPARTAN under this Agreement and any future agreement with SPARTAN, each Merchant hereby grants to SPARTAN a security interest in collateral (the "Collateral"), that is defined as collectively: (a) all accounts, including without limitation, all deposit accounts, accounts-receivable, and other receivables, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined by Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by any Merchant; and (b) all proceeds, as that term is defined by Article 9 of the UCC. The parties acknowledge and agree that any security interest granted to SPARTAN under any other agreement between any Merchant or Guarantor and SPARTAN (the "Cross-Collateral") will secure the obligations hereunder and under this Agreement. Negative Pledge: Each Merchant agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral or the Cross-Collateral, as applicable.

Each Merchant agrees to execute any documents or take any action in connection with this Agreement as SPARTAN deems necessary to perfect or maintain SPARTAN's first priority security interest in the Collateral and the Cross-Collateral, including the execution of any account control agreements. Each Merchant hereby authorizes SPARTAN to file any financing statements deemed necessary by SPARTAN to perfect or maintain SPARTAN's security interest, which financing statements may contain notification that each Merchant has granted a negative pledge to SPARTAN with respect to the Collateral and the Cross-Collateral, and that any subsequent lienor may be tortiously interfering with SPARTAN's rights. Each Merchant shall be liable for and SPARTAN may charge and collect all costs and expenses, including but not limited to attorney fees, which may be incurred by SPARTAN in protecting, preserving, and enforcing SPARTAN's security interest and rights. Each Merchant further acknowledges that SPARTAN may use another legal name and/or D/B/A or an agent when designating the Secured Party when SPARTAN files the above-referenced financing statement(s).

**34. Events of Default.** An "Event of Default" may be considered to have taken place if any of the following occur:
(1) Any Merchant violates any term or covenant in this Agreement;
(2) Any representation or warranty by any Merchant in any Agreement with SPARTAN that has not been terminated proves to have been incorrect, false, or misleading in any material respect when made;

**I have read and agree to the terms and conditions set forth above:**

*Cory Marquis*
_____

Name: <u>Cory Shannon Marquis</u>   Title:<u>Owner</u>   Date: <u>11/28/2022</u>

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

(3) Any Merchant fails to provide SPARTAN with written notice of any material change in its financial condition, operation, or ownership within seven days thereafter (unless a different notice period is specifically provided for elsewhere in this Agreement;

(4) the sending of notice of termination by any Merchant or Guarantor;

(5) Any Merchant transports, moves, interrupts, suspends, dissolves, or terminates its business without the prior written consent of SPARTAN other than a bankruptcy filing;

(6) Any Merchant transfers or sells all or substantially all of its assets without the prior written consent of SPARTAN;

(7) Any Merchant makes or sends notice of any intended bulk sale or transfer by any Merchant without the prior written consent of SPARTAN;

(8) Any Merchant uses multiple depository accounts without the prior written consent of SPARTAN;

(9) Any Merchant changes the Account without the prior written consent of SPARTAN;

(10) SPARTAN is not provided with updated login or password information for the Account within one business day after any such change is made by any Merchant;

(11) Any Merchant fails to send bank statements, merchant account statements, or bank login information for the Account within two business days after a written request for same is made by SPARTAN;

(12) Any Merchant performs any act that reduces the value of any Collateral granted under this Agreement;

(13) Any Merchant fails to deposit its Receivables into the Account;

(14) Any Merchant causes any ACH debit to the Account by SPARTAN to be blocked or stopped without providing any advance written notice to SPARTAN, which notice may be given by e-mail to frank@spartancapitalgroup.com; or

(15) Any Merchant prevents SPARTAN from collecting any part of the Receivables Purchased Amount;

(16) Any Merchant causes any ACH debit to the Account to be stopped or otherwise returned that would result in an ACH Return Code of R08, R10, or R29 and that Merchant does not within two business days thereafter provide SPARTAN with written notice thereof explaining why that Merchant caused the ACH debit to be stopped or otherwise returned, which notice may be given by e-mail to frank@spartancapitalgroup.com; or

(17) Any Merchant defaults under any of the terms, covenants, and conditions of any other agreement with SPARTAN.

**35. Remedies.** In case any Event of Default occurs and is not waived, SPARTAN may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement, or other provision contained herein, or to enforce the discharge of each Merchant's obligations hereunder, or any other legal or equitable right or remedy. All rights, powers, and remedies of SPARTAN in connection with this Agreement, including each Protection listed in Section 17, may be exercised at any time by SPARTAN after the occurrence of an Event of Default, are cumulative and not exclusive, and will be in addition to any other rights, powers, or remedies provided by law or equity. In addition to the foregoing, in case any Event of Default occurs and is not waived, SPARTAN will be entitled to the issuance of an injunction, restraining order, or other equitable relief in SPARTAN's favor, subject to court or arbitrator approval, restraining each Merchant's accounts and/or receivables up to the amount due to SPARTAN as a result of the Event of Default, and each Merchant will be deemed to have consented to the granting of an application for the same to any court or arbitral tribunal of competent jurisdiction without any prior notice to any Merchant or Guarantor and without SPARTAN being required to furnish a bond or other undertaking in connection with the application.

**36. Required Notifications.** Each Merchant is required to give SPARTAN written notice at least one day prior to any filing under Title 11 of the United States Code. Merchant(s) are required to give SPARTAN at least seven days' written notice prior to the closing of any sale of all or substantially all of any Merchant's assets or stock.

**37. Assignment.** This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns, except that Merchant(s) shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of SPARTAN, which consent may be withheld in SPARTAN's sole discretion. SPARTAN may assign, transfer, or sell its rights under this Agreement, including, without limitation, its rights to receive the Receivables Purchased Amount, and its rights under Section 33 of this Agreement, the Guarantee, and any other agreement, instrument, or document executed in connection with the transactions contemplated by this Agreement (a

**I have read and agree to the terms and conditions set forth above:**

*Cory Marquis*

---

Name: <u>Cory Shannon Marquis</u>   Title:<u>Owner</u>   Date: <u>11/28/2022</u>

Case 6:23-cv-06258-FPG   Document 11-3   Filed 06/09/23   Page 10 of 10

Page 9 of 17

## STANDARD MERCHANT CASH ADVANCE AGREEMENT

"Related Agreement"), or delegate its duties hereunder or thereunder, either in whole or in part. From and after the effective date of any such assignment or transfer by SPARTAN, whether or not any Merchant has actual notice thereof, this Agreement and each Related Agreement shall be deemed amended and modified (without the need for any further action on the part of any Merchant or SPARTAN) such that the assignee shall be deemed a party to this Agreement and any such Related Agreement and, to the extent provided in the assignment document between SPARTAN and such assignee (the "Assignment Agreement"), have the rights and obligations of SPARTAN under this Agreement and such Related Agreements with respect to the portion of the Receivables Purchased Amount set forth in such Assignment Agreement, including but not limited to rights in the Receivables, Collateral and Additional Collateral, the benefit of each Guarantor's guaranty regarding the full and prompt performance of every obligation that is a subject of the Guarantee, SPARTAN's rights under Section 17 of this Agreement (Protections Against Default), and to receive damages from any Merchant following a breach of this Agreement by any Merchant. In connection with such assignment, SPARTAN may disclose all information that SPARTAN has relating to any Merchant or its business. Each Merchant agrees to acknowledge any such assignment in writing upon SPARTAN's request.

**38. Notices.** All notices, requests, consents, demands, and other communications hereunder shall be delivered by certified mail, return receipt requested, or by overnight delivery with signature confirmation to the respective parties to this Agreement at their addresses set forth in this Agreement and shall become effective only upon receipt. Written notice may also be given to any Merchant or Guarantor by e-mail to the E-mail Address listed on the first page of this Agreement. Each Merchant must set its spam or junk mail filter to accept e-mails sent by frank@spartancapitalgroup.com and its domain. This Section is not applicable to service of process or notices in any legal proceedings.

**39. Choice of Law.** Each Merchant acknowledges and agrees that this Agreement was made in the State of New York, that the Purchase Price is being paid by SPARTAN in the State of New York, that the Receivables Purchased Amount is being delivered to SPARTAN in the State of New York, and that the State of New York has a reasonable relationship to the transactions encompassed by this Agreement. This Agreement and the relationship between SPARTAN, each Merchant, and each Guarantor will be governed by and construed in accordance with the laws of the State of New York, without regard to any applicable principles of conflict of laws.

**40. Forum and Venue Selection.** Any litigation relating to this Agreement or involving SPARTAN on one side and any Merchant or any Guarantor on the other must be commenced and maintained in any court located in the State of New York (the "Acceptable Forums"). The parties agree that the Acceptable Forums are convenient, submit to the jurisdiction of the Acceptable Forums, and waive any and all objections to the jurisdiction or venue of the Acceptable Forums. If any litigation is initiated in any other venue or forum, the parties waive any right to oppose any motion or application made by any party to transfer such litigation to an Acceptable Forum. The parties agree that this Agreement encompasses the transaction of business within the State of New York and that the Supreme Court of the State of New York ("Supreme Court") will have jurisdiction over any litigation relating to this Agreement that is within the jurisdictional limit of the Supreme Court. In addition to the Acceptable Forums, any action or proceeding to enforce a judgment or arbitration award against any Merchant or Guarantor or to restrain or collect any amount due to SPARTAN may be commenced and maintained in any other court of competent jurisdiction.

**41. Jury Waiver.** The parties agree to waive trial by jury in any dispute between them.

**42. Counterclaim Waiver.** In any litigation or arbitration commenced by SPARTAN, each Merchant and each Guarantor will not be permitted to interpose any counterclaim.

**43. Statutes of Limitations.** Each Merchant and each Guarantor agree that any claim that is not asserted against SPARTAN within one year of its accrual will be time barred.

**44. Costs.** Each Merchant and each Guarantor must pay all of SPARTAN's reasonable costs associated with a breach by any Merchant of the covenants in this Agreement and the enforcement thereof, including but not limited to collection agency fees, attorney fees, which may include a contingency fee of up to 40% of the amount claimed, expert witness fees, and costs of suit.

**I have read and agree to the terms and conditions set forth above:**

*Cory Marquis*

_____

Name: Cory Shannon Marquis   Title: Owner   Date: 11/28/2022